Application of Herman G. MUENCH-INGER.

Patent Appeal No. 6986.

United States Court of Customs and Patent Appeals.

May 16, 1963.

Harold F. Watson, Washington, D. C., (Watson, Cole, Grindle & Watson, Washington, D. C., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (Jere W. Sears, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

WORLEY, Chief Judge.

This appeal is from the decision of the Board of Appeals which affirmed the examiner's rejection of claims 15, 3, 6, 7 and 8 of appellant's application [1] for a patent for a locking screw.

Claims 15 and 7 are representative and read:

"15. A fastening device comprising a threaded shank, said thread

1. Serial No. 335,879, filed February 9, 1953.

being generally helical and of V-type thread form having a wider root portion and a narrower crest, the thread crest being interrupted throughout a plurality of turns by the provision in each turn of the thread of a thread crest portion which is otherwise normal and of uniform section throughout its length but is in disalignment with said helix, like points of all said disaligned portions lying in a helix which is of the same pitch as the general helix of said thread, the crests of all parts of said thread lying in an imaginary right circular cylinder.

"7. A fastening device according to claim 15, said disaligned thread portions being arranged in unbroken succession, each turn of thread comprising a plurality of said disaligned portions."

Claims 3, 6 and 8, like claim 7, are dependent on claim 15.

The references relied on by the examiner and the board are:

| Hosking | 1,963,845 | June 19, 1934. |
| Purtell | 2,177,004 | October 24, 1939. |
| Harding | 2,414,870 | January 28, 1947. |

———◆———

The following figures reproduced from appellant's drawing and the Harding reference will aid in visualizing the claimed invention and the prior art reference relied on principally by the board.

**Figure 1 of appellant's Drawing:**

**Figures of Harding:**

In his application, appellant describes the preferred form of his locking screw as follows:

"Referring now to Figure 1, it will be seen that the fastening device there illustrated comprises an oval head machine screw 9 consisting generally of a cylindrical shank portion 10 and a head 11. The shank 10 is provided, in the present instance, with a thread extending throughout the length of the shank, but it will be understood that the thread may be terminated at any desired distance from the head, for particular applications. For purposes of the present description, the shank may be said to be divided into three portions 13, 14 and 15, the thread 12 of the end portions 13 and 15 being of conventional helical form while in the intermediate shank portion 14 the thread is of a somewhat different character, consisting of a series of relatively short segments 16. Each segment 16 constitutes a portion of a helix of higher slope than that of the thread 12, while the "functional helix" of the thread provided on the shank portion 14 and consisting of the thread segments 16, remains the same as that of the thread 12. That is, like points on successive segments 16 lie on a helix having the same slope as that of the thread 12. Accordingly, the leading end of each segment 16 lies above (to the left in Fig. 1) the trailing end of the preceding segment 16, the terms "leading" and "trailing" having reference to rotation in the counter-clockwise or loosening direction of rotation. Since the principal stress exerted upon the thread, when the screw is tightened, is exerted upon the upper flank of the thread, it will be apparent that the screw may be tightened with a minimum of additional resistance caused by the disaligned segments 16, whereas, when torque is applied in the opposite sense, to remove the screw, the upper or leading end of each segment 16 will tend to bite into the abutting flange of the female thread with which it is associated, thus resisting removal of the screw.

"Case hardening or other heat treatment of a screw provided with a thread of the character described, is advantageous in that it will impart resilience to the segments 16, so that such segments will not be permanently deformed as the screw is tightened, but will remain operative to exert their aforesaid resistance to loosening of the screw.

"In the device illustrated in Figure 1, it will be seen that each disaligned segment 16 has, in effect, been rotated counterclockwise about its midpoint, i.e., the midpoints of all segments lie on the same helix as that of the conventional thread 12. * * * "

The application describes the use of the locking screw as follows:

"A thread of the character described will have a ratchet-like effect in that the same may be tightened in a tapped hole without the exertion of substantially more torque than necessary for tightening a conventional machine screw, for example, but when a torque is applied in the opposite sense, tending to remove the screw, the ends of the disaligned portions or segments will tend to bite into the adjacent flank of the female thread and resist turning of the screw in the loosening direction."

Appellant discloses modified forms of his screw in which the disaligned segments are, in effect, rotated about their trailing ends rather than their midpoints and in which disaligned thread portions are interspaced with portions which lie on the same helix as that of the conventional thread.

The application also discloses special thread rolling dies for rolling threads of

the character described onto the screw shank.

The Harding patent relates to a self-locking screw formed from a screw which originally is provided with a conventional helical thread but is deformed over a thread portion intermediate its end, which portion is designated 13′ in Figure 4. The patent states:

"* * * As best shown in Figures 4 and 10, the thread is deformed by subjecting it to a compressive action in a manner to be described, such that a portion of the thread indicated at 13′ is displaced laterally with respect to the remainder of the thread so that the thread is displaced at two points, the sections 13′ being on opposite sides of the screw and 180° displaced from each other. This portion of the shank or core may also be deformed to an oval or elliptical cross section * * * if sufficient pressure is used."

Harding describes the method of obtaining the deformation as follows:

"The method of obtaining this deformation in accordance with my invention is illustrated in Figures 5 and 6. A die comprising two sections 16 and 17 having the same threads per inch and the same diameter as the normal portion 13 of the screw is so designed that a small segment represented by the portion marked E in Figure 6 is removed from the die so that when the die is closed an elliptical shape is produced in the threaded aperture within the die. The threaded portion of the screw where it is desired to incorporate threads made according to my invention is subjected to pressure between the two halves of the die. As a result the threaded portions 13 of the screw assume the form shown at 13′ in Figures 4 and 10. * * * a part 14 of the thread is displaced laterally in one direction and part of the thread 15 is displaced laterally in the opposite direction to produce a break in the thread 13′. The portion of the thread between displaced portions 14 and 15 appears to be rotated out of line with the remainder of the thread. If subjected to sufficient pressure the core or shank of the screw is made to assume a more or less elliptical shape * * *."

The Hosking patent discloses a lock nut wherein the end thread is slotted at spaced points. The thread segments between the slots are warped out of the normal plane of the thread to provide projections which grip the threads of a bolt threaded therein to prevent retrograde movement.

The Purtell patent shows a screw having notched humps provided in a thread thereof, said hump having edges which will tend to dig into a female thread to impede retrograde movement of the screw.

The examiner, noting that "there is direct conflict of opinion between applicant and the examiner as to what Harding discloses," rejected the appealed claims on that patent while making reference to Hosking and Purtell. In affirming the rejection, the board accepted the examiner's interpretation of the Harding disclosure.

The examiner regarded Harding as disclosing that the long portions of the thread 13′, which are engaged by the die sections 16 and 17, are displaced axially of the bolt "in opposite directions on opposite ends (circumferentially) of each portion 13′." He took the view that the threads 13′ would be rotated by the dies contacting them but otherwise would remain substantially normal with their crests in the same right circular cylinder as the other threads "unless sufficient pressure were applied to render the shank elliptical."

On the basis of that interpretation, the examiner stated that the "only structural difference that is seen to exist between the distorted thread portions 13′ of Harding and those that are present in the instant case, are differences in size; that is, where Harding provides thread segments that extend nearly 180

degrees about the shank, applicant's portions are less than 90 degrees in extent." He regarded that difference as only a matter of design. The board agreed with the examiner's position, stating that "the Harding reference is in fair response to the claimed subject matter."

We are unable to agree with the examiner's interpretation of Harding. In the first place, we find nothing in the reference disclosing that the die sections rotate the long segments of the thread 13′ engaged by them. The examiner states that the ordinary worker skilled in the die working art would know that "the only way" the thread portion 13′ could be rotated in the manner the examiner described "would be by having the die threads formed on a different helix angle from the screw threads." However, the application describes the die sections as having the same threads per inch and the same diameter as the normal thread portion of the screw and the examiner concedes that "Harding does not specifically state that his dies 16 and 17 have threads with a helix angle greater than the bolt threads 15." The fact is that there is not even a suggestion in the patent that the threads of dies 16 and 17 have a different helix angle than the regular threads on the Harding bolt.[2]

It is clear to us from a study of the entire Harding patent that the die threads have the same helical angle as the normal screw threads, as well as the same threads per inch and the same diameter. Pressing the die sections against the screw does not rotate the screw thread segments engaged by the die sections but instead imposes a compressive force against those sections whereby "a part 14 of the thread is displaced laterally in one direction and a part of the thread 15 is displaced laterally in the opposite direction." That is,

the lateral displacement takes place at the ends of the short sections of thread 13′ which are not within the mold sections. When Harding states that the "portion of the thread between displaced portions 14 and 15 appears to be rotated out of line with the remainder of the thread," he clearly is referring to those short sections.

We think it clear that the described mold action results in deforming the thread portion 13′ to that out-of-circular configuration which Harding refers to as elliptical. The statement that the corresponding portion of "the shank or core may also be deformed to an oval or elliptical cross section * * * if sufficient pressure is used" has reference only to the central portion of the screw from which the threads extend and does not indicate that the overall cross-section of the deformed threads will remain circular with any form of the invention. That conclusion finds particular support in Figure 4 of the patent which shows the threads 13′ of lesser diameter than the unmodified threads, and in the fact that no form of the invention not having an elliptical shape is illustrated or described. In fact, Harding refers specifically to the increased pressure to which a nut is subjected as a result of the elliptical shape of the thread.

It thus seems that the interpretation of Harding on which the examiner and board based their decisions is erroneous with the result that, in addition to the differences noted in those decisions, the claims further distinguish over Harding in the recitation of "the crests of all parts of said thread lying in an imaginary right circular cylinder." However, the examiner, in referring to the question of the "right circular cylinder" limitation, did state:

"* * * even if such a distinction did exist over the Harding

---

2. Appellant points out in his brief that "the Examiner's theory is in direct conflict with Harding's claim 4 which states that the die has 'threads registering with

the threads on said body in initial contact with said threads' which, of course, could not occur unless both sets of threads were of the same helix angle."

screw, Purtell 2,177,004 shows that it is old to laterally displace a portion of a thread crest while maintaining all portions of the crest on an imaginary right circular cylinder so that such a distinction cannot form the basis of patentable invention."

The examiner also stated:

"In conclusion, since the Harding reference discloses a locking device that is the equivalent of that claimed here, both in regard to structure and to function and since the distinctions that do exist in the present device over that of Harding, are shown to be old by Hoskins [sic] and Purtell and clearly combinable with the Harding concept to arrive at applicant's claimed structure the rejection of claims 15, 3 and 6–8 should be affirmed."

The above statements appear to involve a rejection on Harding in view of Purtell and possibly also in view of Hosking, which rejection was not specifically discussed by the board. We are unable to find any support for such a rejection. Appellant's structure, as claimed, may be tightened in a tapped hole without exerting a torque substantially greater than required by a conventional screw although it offers much greater resistance to retrograde movement. The Harding structure has a non-circular or elliptical shape which results in greater resistance to forward as well as retrograde movement. Thus, Harding's screw is not the equivalent of appellant's. Moreover, the examiner has not described any manner in which Purtell or Hosking would suggest modifying Harding to provide appellant's device and no basis for such modification is apparent to us.

Under the circumstances, we feel obliged to reverse the decision appealed from.

Reversed.